**Marcy SMIGA, Plaintiff-Appellant,**

v.

**DEAN WITTER REYNOLDS, INC., and Raymond B. Anderson, Defendants-Appellees.**

**No. 798, Docket 84–7528.**

United States Court of Appeals, Second Circuit.

Argued Feb. 26, 1985.

Decided June 28, 1985.

Merrill J. Chapman, New York City, for plaintiff-appellant.

J. Robert Lunney, New York City (Michael P. Manning, Lunney & Crocco, New York City, of counsel), for defendants-appellees.

Before OAKES, MESKILL and PIERCE, Circuit Judges.

PIERCE, Circuit Judge:

Marcy Smiga (Smiga) appeals from confirmation of an arbitration award in favor of appellees Dean Witter Reynolds, Inc. and Raymond B. Anderson (hereinafter jointly referred to as DWR) and the grant of attorneys' fees and excess costs incurred

in confirming the arbitration award by the United States District Court for the Eastern District of New York, Jacob Mishler, *Judge.* See Opinion and Order dated January 9, 1984, and Partial Judgment dated May 14, 1984.

Appellant Smiga primarily contends that the district court lacked jurisdiction to confirm the arbitration award and abused its discretion in awarding attorneys' fees and excess costs to DWR. Appellees maintain that the district court had jurisdiction to confirm the arbitration award and also that the court's award of attorneys' fees and excess costs was justified pursuant to 28 U.S.C. § 1927. We affirm the decision of the district court in favor of appellees.

## BACKGROUND

Appellant Smiga was a registered representative with the New York Stock Exchange (NYSE) and was employed as a stockbroker by appellee Dean Witter Reynolds, Inc., at its Garden City, Long Island office, from March, 1980 until September, 1981.

On March 27, 1980, Smiga signed an agreement with the NYSE which contained the following provision concerning arbitration:

> I agree that any controversy between me and any member or member organization [e.g. DWR] or affiliate or subsidiary thereof arising out of my employment or the termination of my employment shall be settled by arbitration at the instance of any such party in accordance with the arbitration procedure prescribed in the Constitution and Rules then obtaining of the New York Stock Exchange, Inc.

According to DWR, Smiga was mistakenly overpaid more than $13,000. DWR contends that when Raymond B. Anderson, branch manager of Dean Witter Reynolds, Inc., confronted Smiga with this claimed overpayment in September, 1981, she denied being overpaid and refused to return any of the funds. Thereupon, on September 9, 1981, Anderson terminated Smiga's employment.

On March 4, 1982, Smiga filed a complaint against DWR with the Equal Employment Opportunity Commission (EEOC) alleging sexual harassment under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000–e *et seq.* According to Smiga, not only was she not overpaid, but her dismissal resulted from her refusal to grant the manager sexual favors and not from her failure to repay the alleged overpayment. Smiga contends that, in discussing the alleged overpayment and the promissory note which Anderson insisted she sign, Anderson conditioned her continued employment at Dean Witter Reynolds, Inc. on submitting to his sexual advances. According to Smiga, Anderson stated that, in return for the sexual favors, the overpayment would be forgotten. After an evidentiary hearing, the EEOC, on July 30, 1982, found "[n]o reasonable cause ... to believe that the allegations made in [Smiga's] charge are true." The EEOC then issued Smiga a "right to sue" letter.

In the interim, on May 13, 1982, DWR filed a claim against Smiga with the NYSE arbitration department demanding arbitration of its claim for overpayment. The claim was forwarded to Smiga by the NYSE on or about May 28, 1982. Smiga requested that the NYSE decline jurisdiction of this matter, stating that her claim for sexual harassment and DWR's claim for overpayment were "inextricably intertwined" and that an exchange proceeding could not preempt a Title VII action. The NYSE, however, maintained that it had jurisdiction and set November 17, 1982, as the date for the arbitration.

Within the statutory 90 day period provided for under Title VII after receipt of a "right to sue" letter from the EEOC, Smiga commenced an action on November 3, 1982, by filing a complaint in the District Court for the Eastern District of New York, claiming, inter alia, compensatory and punitive damages. Smiga alleged, in eight causes of action, that she was: 1) sexually discriminated against and sexually harassed; 2) deprived of a property right under 42 U.S.C. § 1983; 3) subjected to discriminatory retaliation; 4) victimized by

an anticompetitive group boycott by barring her from employment in the securities industry unless she signed the arbitration agreement; 5) deprived of rights and privileges secured by the Constitution; 6) defamed; 7) abusively discharged; and 8) deprived of her final paycheck. In addition, the complaint requested a declaratory judgment with appropriate injunctive relief holding that Smiga's arbitration agreement was null, void and unenforceable and that the NYSE be permanently enjoined from asserting jurisdiction over Smiga.

On November 12, 1982, Smiga moved for a preliminary injunction with respect to the arbitration hearing set for November 17, 1982. On November 16, 1982, Judge Mishler denied this motion and stated in part:

> We have [a] strong public policy principle and [that] is the strong public policy that favors arbitration.
>
> [Plaintiff] signed an arbitration agreement. I am convinced that the arbitration has nothing to do with a Title 7 claim. She still has a claim for sex discrimination, the claim that Dean Witter fired her because of her sex.
>
> The motion for a preliminary injunction is denied and it is so ordered.
>
> \* \* \* \* \* \*
>
> I will not interfere with the arbitration proceedings at all. In light of the history of this, I don't think it is fair to come in on a claim of sex discrimination in the firing and to claim that the arbitration on an overpayment should be denied where it is clear that the arbitration is directed solely to the question of overpayment and not the firing.

The next day, November 17, 1982, Smiga commenced a state action in the Supreme Court, New York County, again seeking a declaratory judgment that her arbitration agreement with DWR was null, void, and unenforceable on the grounds that it was against public policy and that it was an adhesion contract. Smiga also sought again to enjoin DWR from arbitrating its claim against her. Finding that the arbitration had nothing to do with Smiga's Title VII claim and referring to Judge Mishler's

decision denying her motion for a preliminary injunction, the state court dismissed this further attempt to stay the arbitration proceeding. *Marcy Smiga v. Dean Witter Reynolds, Inc.*, No. 26826/82, slip op. at 2 (N.Y.Sup.Ct. Jan. 11, 1983).

Thereafter, Smiga sought a stay of the NYSE arbitration proceeding from the Appellate Division, First Department, of the New York Supreme Court. On March 3, 1983, the Appellate Division denied her motion for a stay of arbitration. *Marcy Smiga v. Dean Witter Reynolds, Inc.*, No. M–829, mem. at 1 (N.Y.Sup.Ct.App.Div. March 3, 1983). Although Smiga filed a notice of appeal, no appeal was ever pursued.

A NYSE arbitration hearing was held on February 17, 1983. Although Smiga's attorney, Merrill J. Chapman, was given the opportunity to participate in the hearing, Chapman merely attended the proceedings, but did not participate in them. On March 8, 1983, an arbitration award was unanimously rendered in DWR's favor in the sum of $13,182. Subsequent to this award by the arbitration panel, on May 17, 1983, Smiga filed an amended complaint in her federal action in the Eastern District of New York, deleting any request for injunctive relief and any reference to the arbitration, but reasserting her claim of sexual harassment. She also added claims for intentional infliction of emotional distress and invasion of privacy. In other respects, the amended complaint alleged essentially the same claims as the original complaint.

Following Smiga's failure to pay the March 8 award, DWR moved in Smiga's November 3, 1982 action in the Eastern District of New York to confirm the arbitration award and to dismiss the causes of action claiming abusive discharge and emotional distress pursuant to Fed.R.Civ.P. 12(b)(6). By order dated January 9, 1984, the district court granted DWR's motion to dismiss, treating it as a motion for partial summary judgment pursuant to Fed.R. Civ.P. 56. In addition, the district court granted DWR's motion to confirm the arbitration award. It also granted DWR's mo-

tion for attorneys' fees and excess costs reasonably incurred in confirming the arbitration award based upon the district court's finding that opposition to the motion to confirm was "frivolous, unreasonable and groundless." The district court directed Smiga's attorney to pay DWR's attorneys' fees and costs totalling $1,700.23 and directed Smiga, within twenty days of the date of the decision, to pay $13,182, plus interest from March 8, 1983, to DWR. Smiga's additional causes of action are still pending before the district court.

Thereafter, DWR moved for entry of judgment pursuant to Fed.R.Civ.P. 54(b), and Smiga moved under Fed.R.Civ.P. 59(e) to alter or amend the judgment. By order dated May 14, 1984, the district court denied Smiga's motion, granted appellee DWR's motion, and directed entry of a partial judgment against both Smiga and Chapman requiring them to satisfy the judgments by June 3, 1984. It is from these judgments that Smiga and Chapman now appeal.

On appeal, appellant Smiga contends that: 1) the arbitration panel lacked jurisdiction to grant, and the district court lacked jurisdiction to confirm, the arbitration award; 2) the arbitration agreement she signed with the NYSE was not enforceable by DWR; 3) the district court improperly denied her a jury trial on the issue of arbitrability; 4) venue for the confirmation motion was incorrectly found to be in the Eastern District of New York; 5) service was improper; and 6) the district court abused its discretion in awarding attorneys' fees and excess costs to DWR.

## DISCUSSION

Smiga presents three grounds in support of her contention that the district court lacked jurisdiction to confirm the arbitration award. First, Smiga states that the original complaint seeking a stay of the arbitration, dated November 3, 1982, was superseded by the filing of an amended complaint. According to Smiga, since the amended complaint drops any reference to enjoining the NYSE arbitration proceeding, the district court lacked jurisdiction to confirm the arbitration award.

We find this argument to be without merit. Contrary to *International Controls Corp. v. Vesco*, 556 F.2d 665, 669 (2d Cir.1977) cited by Smiga, in which an amended complaint was filed prior to any action being taken in the case, Smiga's amended complaint herein was served in May, 1983, six months after the district court denied Smiga's motion to enjoin proceedings under the arbitration agreement by order dated November 16, 1982 and two months after the arbitration award was rendered on March 8, 1983. The purpose of amending a pleading "is to assert matters that were overlooked or were unknown ... at the time ... [of the] original complaint or answer." 6 C. Wright and A. Miller, *Federal Practice and Procedure* § 1473 (1971). Amendment of a pleading in an effort to rescind jurisdiction over an issue on which a court has already acted is not permitted. Therefore, since, as discussed below, the court had jurisdiction to confirm the arbitration award by virtue of Smiga's original complaint, this jurisdiction would not be eliminated merely by her filing of an amended complaint at a later date.

Second, Smiga contends that DWR failed to assert any basis for federal subject matter jurisdiction in its motion to confirm, and, therefore, the district court lacked jurisdiction. We believe, however, that DWR has satisfied the prerequisites for federal subject matter jurisdiction.

In *Metro Industrial Painting Corp. v. Terminal Construction Co.*, 287 F.2d 382, 384 (2d Cir.1961), this Court held: "[I]n addition [to diversity], the contract in which the arbitration clause is included must be one 'evidencing a transaction involving commerce' within the meaning of Sections 1 and 2 of the Act." In an affidavit submitted in support of its motion to confirm, DWR asserted diversity as a basis for the court's jurisdiction. DWR alleged that it is a corporation organized under the laws of Delaware; that it has its principal

place of business in New York; that Smiga is a citizen of New Jersey; that Raymond B. Anderson is a citizen of New York; and that the amount in controversy exceeds $10,000. In addition, since Smiga's contract with the NYSE contemplates using interstate communication facilities and engaging in interstate activities, *Dickstein v. duPont*, 320 F.Supp. 150, 152–53 (D.Mass. 1970), *aff'd*, 443 F.2d 783, 785 (1st Cir. 1971), in our view, the arbitration clause in Smiga's agreement with the NYSE was part of a "contract evidencing a transaction involving commerce" within the meaning of 9 U.S.C. § 2. *Wilko v. Swan*, 346 U.S. 427, 430, 74 S.Ct. 182, 184, 98 L.Ed. 168 (1953); *Brown v. Gilligan, Will & Co.*, 287 F.Supp. 766, 770 (S.D.N.Y.1968).

■ Appellant further argues that the district court lacked jurisdiction to confirm the arbitration award since the arbitration panel itself allegedly lacked jurisdiction. An arbitration panel derives its jurisdiction from an agreement of the parties, 9 U.S.C. § 2; *Boston and Maine Corporation v. Illinois Central Railroad Company*, 274 F.Supp. 257, 260 (S.D.N.Y.1967), *aff'd*, 396 F.2d 425 (2d Cir.1968), or from an order of a court compelling arbitration. 9 U.S.C. § 4. Herein, Smiga entered into an agreement giving an arbitration panel jurisdiction over "any controversy ... arising out of [Smiga's] employment or the termination of [her] employment." As the district court found, the question of overpayment, at issue herein, is a controversy arising out of Smiga's employment.

According to Smiga, if the arbitration panel's jurisdiction derives from an agreement to arbitrate, as opposed to an order compelling arbitration, the parties must have executed a valid submission agreement. Since Smiga did not execute a submission agreement and since there was no court order compelling arbitration, Smiga contends that the arbitration panel herein lacked jurisdiction. DWR argues, however, that if a submission agreement were necessary in order for an arbitration panel to have jurisdiction, the jurisdiction granted to arbitrators by virtue of an agreement

to arbitrate could be cancelled by the unilateral act of one party refusing to execute a submission agreement.

We find DWR's argument to be persuasive. Moreover, it is not refuted by Smiga's reference to the relevant rules of the NYSE.

Rule 347 of the NYSE states:

> Any controversy between a registered representative and any member or member organization arising out of the employment or termination of employment of such registered representative by and with such member or member organization shall be settled by arbitration, at the instance of any such party, in accordance with the arbitration procedure prescribed elsewhere in these rules.

Thus, Rule 347 of the NYSE, if it applies herein, would seem to require arbitration of the instant dispute.

■ Rule 347, however, applies to the parties herein only if it is incorporated by reference pursuant to Rule 629, which incorporates by reference the other rules, including Rule 347, only by virtue of an executed submission agreement. Rule 629 states: "This Code shall be deemed a part of and incorporated by reference in every duly-executed Submission Agreement...." Since no submission agreement was executed by Smiga, Rule 347 is not incorporated by reference, and, therefore, no requirement to submit to arbitration follows from the NYSE rules in this case.

■ However, Smiga and the NYSE entered into a separate agreement which contained an arbitration clause. Smiga contends that this arbitration clause is part of an agreement between only herself and the NYSE and that therefore it cannot be enforced by DWR. We believe that, since Smiga did not allege the absence of an agreement to arbitrate, enforceable by DWR, as a basis for her motion in the district court for an order staying arbitration, she has waived this objection. In any event, Smiga's argument is without merit. This Court has held that arbitration contracts between a stock exchange and reg-

istered representatives are valid and enforceable agreements between the representatives and the broker. *See Downing v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 725 F.2d 192, 195 (2d Cir.1984). Therefore, we conclude that, even in the absence of a submission agreement, the arbitration panel herein had jurisdiction pursuant to the separate agreement to arbitrate entered into between Smiga and the NYSE, and DWR could invoke it.

Smiga asserts further that even if the arbitration panel had jurisdiction to arbitrate the dispute, without a submission agreement or a motion to compel, the district court lacked jurisdiction to confirm the arbitration award.

This Court has held that for a federal court to have jurisdiction to confirm an arbitration award and enter judgment, it is not sufficient that the parties have merely agreed to settle their disputes by arbitration. *Varley v. Tarrytown Associates, Inc.,* 477 F.2d 208, 210 (2d Cir.1973). Rather, "[t]he [Arbitration] Act provides that confirmation of an arbitration award is appropriate only where the parties 'in their agreement have agreed that a judgment of the court shall be entered upon the award....' 9 U.S.C. § 9." Herein, as in *Varley,* there was no such explicit agreement, but only a clause providing for the settlement of disputes by arbitration.

If, on the other hand, a submission agreement had been entered into by the parties, the court would have had the power to confirm the award. Rule 628 of the NYSE rules states that "awards may be entered as a judgment in any court of competent jurisdiction," thereby giving the district court the power to confirm the award pursuant to *Varley.* As noted above, however, the next rule, i.e., Rule 629, incorporates by reference the other rules, including Rule 628 regarding entry of judgment, only if there has been a validly executed submission agreement. Smiga argues that, given the absence herein of either a submission agreement, which would thereby incorporate by reference the agreement to have a court enter judgment, or an explicit agreement to have a court enter judgment, the district court lacked jurisdiction to confirm the award.

We agree with Smiga that no submission agreement was executed and no agreement was entered explicitly granting a court the right to enter judgment. In our view, nevertheless, the equivalent of an order to compel arbitration exists herein and therefore we believe the district court had jurisdiction to confirm the award.

This Court has held that a court which orders arbitration retains jurisdiction to determine any subsequent application involving the same agreement to arbitrate, including a motion to confirm the arbitration award. *Marchant v. Mead-Morrison Mfg. Co.,* 29 F.2d 40, 43 (2d Cir.1928); *Lesser Towers, Inc. v. Roscoe-Ajax Construction Co.,* 258 F.Supp. 1005, 1007 (S.D.Cal.1966). The *Marchant* court held that the application for an order to arbitrate, up to and including the confirmation award, was all one proceeding, and thus, were not separable controversies. *Id.* Smiga contends that there was no order to compel arbitration herein, as is required by N.Y.Civ. Prac.Law § 7503(a) (McKinney 1980) and therefore that the *Marchant* holding is inapplicable.

■ However, we find that, assuming an order to compel was the proper procedure, the district court's order denying Smiga's motion to stay arbitration was essentially the equivalent of an order by the district court to compel arbitration. In denying Smiga's motion, the district judge stated: "I am convinced that the arbitration has nothing to do with a Title 7 claim. She still has a claim for sex discrimination.... I will not interfere with the arbitration proceedings at all." As DWR suggests, we find this statement by the district court to be equivalent to an order to compel arbitration and, therefore, following *Marchant,* we hold that the district court herein retained power to confirm the arbitration award.

Smiga next maintains that she was improperly denied a jury trial on the issue of

arbitrability pursuant to 9 U.S.C. § 4. Section 4 states in pertinent part:

> The Court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement.... If the making of the arbitration agreement or the failure, neglect or refusal to perform the same be in issue, the court shall proceed summarily to the trial thereof.... Where such an issue is raised, the party alleged to be in default may ... demand a jury trial of such issue....

 In our view, the district court correctly found that Smiga had entered into an agreement to arbitrate. We therefore conclude that she had no right to a jury trial on this issue. In any event, because Smiga failed to contest the existence of an arbitration agreement enforceable by DWR before the district court, we conclude that she has waived this issue for purposes of appeal. With regard to Smiga's contention that the overpayment question was not arbitrable, although Smiga contested this issue before the district court by means of her motion to stay the arbitration, such an objection does not constitute adequate grounds to contest confirmation of an arbitration award pursuant to 9 U.S.C. §§ 10, 11.[1] Therefore, the district court properly denied Smiga's request for a jury trial.

Next, Smiga argues that venue for the confirmation motion was incorrect and that service was improper. Section 9 of the Arbitration Act states that "[i]f no court is specified in the agreement of the parties, then such application [for an order confirming the arbitration award] *may be made* to the United States court in and for the district within which such award was made" (emphasis added). Since the award was rendered in the Southern District of New York, Smiga maintains that venue for the confirmation motion should have been in the Southern District, rather than in the Eastern District.

 We hold that venue for the confirmation motion was proper in the Eastern District of New York, where Smiga herself commenced the November 3, 1982 action and sought to enjoin enforcement of the arbitration provision to which she had agreed. Once a federal court has subject matter jurisdiction over an action, it may confirm an arbitration award even though it was not the district where the award was granted. We agree with the district court in *NII Metals Services, Inc. v. ICM Steel Corporation*, 514 F.Supp. 164 (N.D.Ill. 1981), which stated:

> It would of course appear wasteful for this Court, already having jurisdiction ..., to be required to dismiss the action, making the prior stay a meaningless act and compelling NII to sue in New York to confirm the award. Accordingly, the conclusion expressed in this opinion is consistent with principles of judicial economy.

*Id.* at 166.

 We also agree with the views expressed in *Paul Allison, Inc. v. Minikin Storage of Omaha, Inc.*, 452 F.Supp. 573 (D.Neb.1978), which held that the venue provision of section 9 should be read as permissive rather than exclusive. The court stated that "[o]rdinary canons of statutory construction suggest that Congress would have used stronger language than 'such application may be made' or 'may apply' if the intention was to restrict the power of a federal court in Arbitration Act cases." *Id.* at 574. *See generally Robert Lawrence Co. v. Devonshire Fabrics, Inc.*, 271 F.2d 402, 408 (2d Cir.1959), *cert. dismissed*, 364 U.S. 801, 81 S.Ct. 27, 5 L.Ed.2d 37 (1960).

As discussed above, the district court satisfied the two requirements for jurisdiction over the action: there was both diversity of citizenship and a "contract evidencing a transaction involving commerce."

---

1. *See* note 2 *infra*.

We therefore find that venue was proper in the Eastern District of New York.

 With regard to service, Smiga argues that service of the application to confirm the arbitration award herein was improper and that therefore the district court did not have in personam jurisdiction over her. Section 9 of the Arbitration Act states in pertinent part:

Notice of the application shall be served upon the adverse party, and thereupon the court shall have jurisdiction of such party as though he had appeared generally in the proceeding. If the adverse party is a resident of the district within which the award was made, such service shall be made upon the adverse party or his attorney as prescribed by law for service of notice of motion in an action in the same court. If the adverse party shall be a nonresident, then the notice of the application shall be served by the marshal of any district within which the adverse party may be found in like manner as other process of the court.

Since Smiga is a resident of New Jersey, and therefore a non-resident of the district within which the award was made, she contends that she should have been personally served by a marshal. DWR maintains that Fed.R.Civ.P. 5 is applicable herein, rather than 9 U.S.C. § 9. Fed.R.Civ.P. 5(b) states in part:

Whenever under these rules service is required or permitted to be made upon a party represented by an attorney the service shall be made upon the attorney unless service upon the party himself is ordered by the court.

Smiga was already before the court by virtue of her Title VII claim and her motion to stay the arbitration. Thus, Smiga waived the provision regarding service by a marshal of 9 U.S.C. § 9, and, as DWR contends, Fed.R.Civ.P. 5 is controlling. We agree and therefore find that service was proper. *Murray Oil Products Co., Inc. v. Mitsui and Co., Ltd.*, 55 F.Supp. 353, 356 (S.D.N.Y.1944), *aff'd*, 146 F.2d 381 (2d Cir. 1944).

 None of Smiga's objections to the confirmation motion constitute adequate grounds to contest confirmation of an arbitration award. The Arbitration Act is clear that a motion to confirm must be granted "unless the award is vacated, modified, or corrected as prescribed in sections 10 and 11 of this title." 9 U.S.C. § 9.[2] Moreover, this Court has held that only clear evidence of impropriety in the arbitration proceedings would justify denial of the

---

**2.** 9 U.S.C. § 10 provides:

§ 10. Same; vacation; grounds; rehearing

In either of the following cases the United States court in and for the district wherein the award was made may make an order vacating the award upon the application of any party to the arbitration—

(a) Where the award was procured by corruption, fraud, or undue means.

(b) Where there was evident partiality or corruption in the arbitrators, or either of them.

(c) Where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced.

(d) Where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

(e) Where an award is vacated and the time within which the agreement required the

award to be made has not expired the court may, in its discretion, direct a rehearing by the arbitrators.

9 U.S.C. § 11 provides:

§ 11. Same; modifications or corrections; grounds; order

In either of the following cases the United States court in and for the district wherein the award was made may make an order modifying or correcting the award upon the application of any party to the arbitration—

(a) Where there was an evident material miscalculation of figures or an evident material mistake in the description of any person, thing, or property referred to in the award.

(b) Where the arbitrators have awarded upon a matter not submitted to them, unless it is a matter not affecting the merits of the decision upon the matter submitted.

(c) Where the award is imperfect in matter of form not affecting the merits of the controversy.

The order may modify and correct the award, so as to effect the intent thereof and promote justice between the parties.

award. *Sommer v. National Bulk Carriers, Inc.*, 597 F.2d 819, 825 (2d Cir.1979). *Accord Ormsbee Development Company v. Grace*, 668 F.2d 1140, 1150 (10th Cir. 1982), *cert. denied*, 459 U.S. 838, 103 S.Ct. 84, 74 L.Ed.2d 79 (1982). Since none of Smiga's objections falls within the enumerated grounds of section 10 or 11 for opposing a motion to confirm, and given that we find Smiga's objections, in any event, to be without merit, we affirm the district court's confirmation of the arbitration award.

Finally, Smiga asserts that the district court abused its discretion in awarding attorneys' fees and excess costs to DWR pursuant to 28 U.S.C. § 1927, and also that the district court denied Smiga's attorney due process by not giving him an opportunity to be heard.

■ Section 1927 of Title 28 of the United States Code provides for imposition of attorneys' fees and excess costs against an attorney "who so multiplies the proceedings in any case unreasonably and vexatiously [as to increase costs] ... reasonably incurred because of such conduct."

The district judge assessed costs against Smiga's attorney based upon the district judge's conclusion that he had presented "frivolous, unreasonable and groundless" opposition to DWR's motion to confirm the arbitration award. In our view, the district judge did not abuse his discretion. Chapman admits that he received DWR's notice of intention to arbitrate on June 3, 1982, which had been personally served on Smiga in May, 1982. Nevertheless, Chapman waited until November 12, 1982 to move for a stay of the arbitration. The requested relief was based on the argument that the issue of overpayment was preempted from arbitration by virtue of the Title VII claim. The district court made it clear during argument on November 16, 1982 that DWR's claim that it had overpaid Smiga was arbitrable and that Smiga would not waive a trial by jury with regard to her sex discrimination claim by participating in the arbitration. Nevertheless, Smiga and Chapman chose not to participate in the arbitration despite the court's assurance that the arbitration would not affect her Title VII claim.

Thereafter, DWR moved to confirm the arbitration award in the district court. At argument on September 7, 1983, the district judge informed Chapman that the grounds for opposing a confirmation award were specifically limited, and also warned Chapman that he was facing the imposition of costs against him pursuant to § 1927 for his unreasonable and vexatious conduct. Furthermore, the court asked Chapman to explain the basis for his potential opposition to the confirmation motion.

Chapman ignored the guidance of the district court in failing to participate in the arbitration. He again disregarded the district court's admonition to him that the grounds for opposing a motion to confirm are specifically limited. Instead, Chapman raised arguments which were not only inappropriate upon a motion to confirm but were also without merit.

We therefore find that the district court did not abuse its discretion in assessing costs and attorneys' fees against Chapman pursuant to 28 U.S.C. § 1927.[3]

■ Chapman next argues that he was denied due process by the district court's failure to provide him with notice and an opportunity to be heard. We find that due process did not require the district court to give Chapman any more notice or hearing than he received. The district court assessed costs, a deprivation less severe than contempt. Therefore, Smiga's references to *United States of America v. Lumumba*, 741 F.2d 12 (2d Cir.1984) and to *Taylor v. Hayes*, 418 U.S. 488, 498–99, 94 S.Ct. 2697, 2703, 41 L.Ed.2d 897 (1974) are inapposite. Furthermore, the district court gave Chapman notice that it was considering the imposition of costs against him, informed him that the grounds for opposition were narrow, and gave him the opportunity to ex-

3. Chapman further multiplied the proceedings on March 30, 1984 by unsuccessfully attempting to disqualify Judge Mishler after the confirmation award was rendered.

plain the basis for the opposition. Chapman's reliance on *Miranda v. Southern Pacific Transport Co.*, 710 F.2d 516, 522 (9th Cir.1983), is misplaced, since he had adequate notice and opportunity to respond to the motion for costs but failed to take advantage of the opportunity. Thus, we find Chapman's argument that he was denied notice and an opportunity to be heard to be without merit.

For the foregoing reasons, we affirm the decision of the district court. Costs to appellees.